BERLIN CONSTRUCTION COMPANY, Appellant, *v.* HERMAN W. Hoops, Respondent.

First Department, December 6, 1918.

**Fraud and deceit** — action for fraudulent representations by defendant inducing plaintiff to complete construction contract — evidence establishing prima facie case — representation of fact and not of mere opinion — when defendant estopped from denying materiality of representation — appeal — rights of appellant on appeal from dismissal of complaint.

In an action for fraud and deceit, it appeared that the plaintiff corporation, engaged in the erection of steel buildings, had, through its representatives, procured contracts for the construction of two buildings for a marble company of which the defendant was at that time president; that the defendant assured plaintiff's representative that the moneys with which to meet the bills of his company *had all been arranged for* and that plaintiff need not hesitate to proceed with the work, and that in reliance upon said statement plaintiff proceeded with the work, but such statement by the defendant is shown by his evidence to have been false, no actual arrangements having been made for meeting the contracts in question, aside from the defendant's professed willingness to himself meet such contract obligations.

*Held,* that the evidence presented was sufficient to justify the submission of the case to the jury.

The defendant's statement that all the money had been arranged for to meet the contracts was more than the expression of a mere opinion or belief on his part and amounted to the representation of a fact.

The defendant is estopped by his subsequent act in refusing to furnish the necessary funds to meet the contracts, from denying the materiality of his representations and from claiming that the money was ever " arranged for."

Since the trial court dismissed the complaint, the appellant is entitled to the most favorable inference on all questions of fact.

One who makes a statement of fact, which he knows to be false, for the purpose or apparent purpose of inducing another to act, is liable for damage resulting from such false representation.

CLARKE, P. J., and LAUGHLIN, J., dissented.

APPEAL by the plaintiff, Berlin Construction Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 11th day of May, 1914, upon the dismissal of the complaint by direction of the court at the close of the whole case.

*David Hunter Miller* of counsel [*William W. Blatchford, Jr.,* with him on the brief *Louis Werner,* attorney], for the appellant.

*George D. Zahm,* for the respondent.

MERRELL, J.:

This action is brought to recover of the defendant damages claimed to have been suffered by the plaintiff by reason of fraud and deceit perpetrated upon it by said defendant. At the close of the evidence upon the trial, upon motion of the defendant, the complaint was dismissed upon the ground that in the view then expressed by the presiding justice the proofs of the alleged fraudulent representations upon which plaintiff complained did not meet the strict requirements of proof in cases of this character, and that the language attributed to defendant and which plaintiff claimed constituted the false representations was too indefinite to form the basis of any verdict against defendant. We think the learned trial court erred in holding that the evidence presented upon the trial did not justify the submission of the case to the jury.

The plaintiff is a New York corporation, engaged in the erection of steel buildings. The defendant, at the time of making the alleged fraudulent representations, was the presi-

dent of the Columbian Marble Company, a foreign corporation created under the laws of the State of Maine, and was a director of said company. The testimony shows that on or about the 30th day of September, 1909, at the city of Rutland, Vt., one Frederick Goodwin Patience, who was a contracting engineer in the employ of the plaintiff corporation, and authorized by said plaintiff to negotiate contracts for the erection of buildings by said plaintiff corporation, and having full authority to enter into contracts with other parties for the erection of buildings, entered into a contract with the Columbian Marble Company, represented by a Mr. Underhill and a Mr. White, officials and duly authorized representatives of said company, for the erection of two buildings in connection with the business of said marble company at Rutland, Vt. A written contract or contracts were prepared and executed in the name of plaintiff, by Patience, as contracting engineer, and also by said Columbian Marble Company, by its said representatives, Underhill and White. At the time of the execution of said contracts for the erection of the buildings, Patience, the contracting engineer for the plaintiff, expressed some doubt to White and Underhill as to the financial responsibility of their company, and was referred by them to the defendant, Herman W. Hoops, the president of the company, as to its credit. A letter was prepared and delivered to Patience, as follows:

> "COLUMBIAN MARBLE COMPANY,
> "RUTLAND, VERMONT, *Sept.* 30, 1909.
> "BERLIN CONSTRUCTION Co.,
> "Berlin, Conn.:
>
> "DEAR SIRS.— In regard to the contract this day signed providing for the erection of two steel buildings, it is understood that you are to refer to Herman W. Hoops, the President of the Company, as to the credit of the Company and if you find the reference unsatisfactory you are at liberty to cancel the contract providing you cancel same not later than October 3rd, 1909.          COLUMBIAN MARBLE CO.
> "by FRANK D. WHITE, *V. P.*
> "GEO. C. UNDERHILL,
> "*as Gen. Mgr.*"

Armed with this letter the contracting engineer of the plaintiff at once proceeded to the city of New York, where the president of the marble company then resided, and on the following morning, October 1, 1909, called upon the defendant at his office in New York city and informed him that he had just come from Rutland where the night before he had signed the contracts with White and Underhill for two buildings, and that not being satisfied in his mind as to the financial standing of the company had required further reference, and had been referred to him. Hoops had been represented to Patience as a very substantial citizen and very wealthy. Patience asked the defendant if he could give him his assurance that the bills for the erection of the buildings would be met when due. Patience testifies that the defendant told him that he could and the proposition was all right, and that the bills would be paid. Patience then pressed the defendant for a written statement to that effect, so that he might have something to show to his superior officers when he returned to the home office; that the defendant stated that he could not do this by reason of a partnership arrangement which he had, but assured plaintiff's contracting engineer that the moneys with which to meet the bills of his company *had all been arranged for*, and that plaintiff need not hesitate to proceed with the work. At the time of this conversation with Hoops, Patience said he had the contracts with him, and that the defendant examined the same, particularly as to the figures. Patience, at the time of this interview, also exhibited to the defendant the letter wherein he was referred to defendant as to the financial standing of the company of which the latter was the head. Patience further testified that the defendant stated to him that the company was a new one which was being formed, and that he, defendant, was interested in it and was looking out for it, and that plaintiff's money would be paid when due; that the money had all been arranged for to meet the payments provided for in the contracts, and would be paid when due, and that the plaintiff should not hesitate to proceed with the work. Patience testified that he had authority to close the contracts, and that as to the representations of the defendant that the money to meet plaintiff's demands for the erection of the buildings had all been arranged

for and would be paid as fast as it fell due, he relied upon and believed the same to be true. However, the contracting engineer says he reported in person to one Robinson, the treasurer of the plaintiff, at the plaintiff's home office at Berlin, Conn., and also reported to the president of the plaintiff corporation, that he had taken the two contracts with the Columbian Marble Company for the erection of two buildings at Rutland, Vt., but not being satisfied with their credit had asked for reference, and had been referred to the defendant, and that he had had an interview with the defendant, and had been by him assured that the moneys had been arranged for to meet these contracts, but further the defendant was unwilling to guarantee the payment of the money, notwithstanding the fact that the defendant was anxious for the plaintiff to go ahead with the work and not cancel the contracts.

Plaintiff's treasurer was called as a witness and testified, without objection, as to his conversation with the plaintiff's contracting engineer as testified to by the latter, and that at once, on October 1, 1909, for the purpose of confirming the report of said contracting engineer, the said treasurer wrote the defendant as follows:

"BERLIN, CONN., *October* 1, 1909.
" Mr. HERMAN W. HOOPS,
　　　　" Rutland, Vt.:

" DEAR SIR.— Referring to the conversation of our representative, Mr. Patience, with you in connection with the contract dated September 30, between Columbian Marble Company and ourselves, as to the ability of the Columbian Marble Company to meet its payments in accordance with the contract, we understand that you are willing to guarantee the payments referred to in the above contract, and we would say that such a guarantee by you would be perfectly satisfactory to us, and we trust it will be your pleasure to write us accordingly.

" Thanking you in advance for your reply, we are,
　　　　　　" Yours very truly,
　　　　　　　　" SEYMOUR N. ROBINSON,
　　　　　　　　　　" *Treasurer.*"

To the treasurer's letter to the defendant the latter replied from New York on October 4, 1909, as follows:

" HAWLEY & HOOPS,

" Manufacturing Confectioners.

" NEW YORK, *Oct. 4th,* 1909.

" SEYMOUR N. ROBINSON, *Treasurer,*

" The Berlin Construction Co.,

" Berlin, Conn.:

" DEAR SIR.— I am in receipt of your letter dated the 1st inst., in which you refer to a conversation your representative, Mr. Patience, had with me in regard to a contract between the Columbian Marble Company and your Company.

" I write to say that I told Mr. Patience that I could not guarantee this account, because of my partnership arrangements, but that there was no doubt that the money would be paid when it was due. This money has been arranged for, and it is for this reason that I can say this to you at this time.

" I cannot give you any further guarantee. The only other thing that you could do would be to hold a lien on the buildings which you are going to put up until they are paid for — if such a thing should happen, but this I am very certain will not happen. .

" I should be pleased to hear from you by return mail as to what your decision is in regard to this matter, and until we come to an agreement in regard to this I would suggest your not beginning work on this contract. Awaiting your reply, I remain, . Yours truly,

" HWH /GB. H. W. HOOPS."

Relying upon the statement contained in the above-quoted letter from the defendant to the treasurer of the plaintiff, that the money had been arranged for to meet the contracts for plaintiff's work and believing the same to be true, on the day following, October fifth, plaintiff's treasurer addressed to the defendant, as president of the Columbian Marble Company, the following letter:

" BERLIN, CONN., *Oct.* 5, 1909.

" Mr. H. W. HOOPS, *President,*

" 271 Mulberry St.,

" New York City:

" DEAR SIR.— We acknowledge receipt of your letter of the 4th inst. and are convinced from your statement that the

Columbian Marble Co. has arranged for the funds to meet payment on our contract, and we are proceeding with the work. The writer will be pleased to call on you when next in New York, perhaps in a week or ten days.

"Yours very truly,

"SEYMOUR N. ROBINSON,

"*Treasurer.*"

The quoted correspondence shows that plaintiff relied upon defendant's representations, and so relying at once undertook the erection of the buildings, and the same have been completed according to the plans and specifications. The contract price for said buildings was $12,542.38. Therefor plaintiff has been paid $7,288.93, and after the work was completed demanded of the Columbian Marble Company and of the defendant the payment of the balance unpaid, which was refused. It is, further, a conceded fact in the case that at the time the moneys sued for in this action became due, the Columbian Marble Company was insolvent and has ever since been insolvent and did not have and has not property with which to meet its obligations.

The plaintiff, upon the trial, introduced the evidence of the defendant taken before trial. The defendant testified that he was at the time of the alleged representation the president of the Columbian Marble Company, and that Underhill and White had charge of the finances at Rutland, Vt. It is conceded that they had authority to execute the contracts in question. Defendant further testifies that he advanced most of the money to finance the corporation himself, and that at the time of the talk between plaintiff's contracting engineer and himself with reference to the responsibility of the Columbian Marble Company, all arrangements with reference to said company's meeting said contract obligations were made by himself personally, and that said arrangements consisted of his, defendant's, having the money in the bank to meet said contracts, but that at that time the money was his and it was in the bank in his own name, and that it was his practice, as money was needed, to forward it to Rutland, Vt., for the purpose of paying the company's obligations; that the bank account was standing

in his own name, and that no other arrangements whatever had been made at the time he represented that the money to meet the contracts had all been arranged for, other than that he had money deposited in the bank in his own name with which he was able to meet such obligations, and that at that time he expected to pay said obligations personally. He further testifies that he did afterwards advance to the Columbian Marble Company sufficient moneys to meet these contracts and directed that the contracts be discharged by payment to the plaintiff. This the respondent seems to think was a substantial compliance with the representations which defendant made to the plaintiff and its officers. Defendant expressly admits that the money, at the time he represented it had been arranged for, had not been paid to the Columbian Marble Company, but that he himself personally had money on deposit with which he expected to discharge said contract. When asked whether or not there was any money on deposit anywhere to the credit of the Columbian Marble Company on the 30th of September, or on the 1st, 2d, 3d or 4th of October, 1909, or upon which it could draw to meet the aforesaid contracts, or whether any specific arrangement had been made by the company of which he was then president to meet said contracts, defendant admitted that he knew of no such specific arrangements, other than his own willingness to pay from his personal account at the bank. When asked whether on October 2d, 3d or 4th, 1909, the Columbian Marble Company had money in the bank or other resources with which to meet its obligations, he answered: " If I sent over $10,000 on that day they had $10,000 in the bank. What they had the next day I can't tell." Defendant testified that on September 17, 1909, he advanced the Columbian Marble Company $5,000, and on September 30, 1909, he advanced to said company the further sum of $5,000, but was unable to give any specific purpose for which said moneys had been advanced, stating that at that time there were many things being bought to get the company into working shape, consisting of horses, wagons, payrolls, machinery, etc. Asked if that money was advanced for the purpose of taking care of the payments provided for in the contracts to the plaintiff, defendant was unable to say that those moneys were used

for said purpose.   Further pressed as to whether these moneys were advanced by defendant to the Columbian Marble Company for the purpose of paying plaintiff's contracts, the defendant answered, " Certainly not."

It appears from the evidence that the defendant, who was president of the Columbian Marble Company, constituted in reality its entire financial strength.   So far as the evidence discloses the defendant financed the company and furnished substantially all of the money to carry on its operations.   The representation which he made to the plaintiff and its officers at the time the latter entered into the contract and before performing the same, that it need not hesitate to proceed with the contract as all of the money had been arranged for to pay for the erection of said buildings, was concerning a matter about which the defendant was in a position to know.' These statements on his part were false as shown by his evidence upon the trial wherein he admits that at the time they were made no actual arrangements had been made for meeting the contracts in question, aside from his professed willingness to himself personally meet such contract obligations.   Such an " arrangement " was of no substance whatever so far as affording plaintiff any protection.   It was all subject to the caprice of the defendant, who might change his mind at any moment by withdrawing his financial support, whereupon the payment of plaintiff's moneys would at once cease to be " arranged for."   The jury might well have found from this evidence that the defendant knew that such representations so made to the plaintiff and upon which it relied, were absolutely false, and that they were made for the purpose of inducing the plaintiff to execute and perform the contracts in question.   His representation in response to plaintiff's particular inquiry into the financial responsibility of the Columbian Marble Company, that the contracts would fully be paid as they fell due, and that all of the money had been arranged for to meet the same, was more than the expression of a mere opinion or belief on his part, and amounted to representation of a fact, to wit, that said moneys were in hand and under the control of the Columbian Marble Company at the time said contracts were executed.   That the plaintiff fully believed in and relied on said representations is evidenced

by the testimony, and particularly by the letters above quoted written by plaintiff's treasurer to the defendant. The evidence is clear that such representations were false, and that defendant knew them to be false when uttered, and that the same were made for the purpose of inducing the plaintiff to make said contracts, and to perform the same.

Furthermore, I think we should hold defendant to be estopped, by his subsequent act in refusing to furnish the necessary funds to meet these contracts, from denying the materiality of such representations, and that he is also estopped from now claiming that the money was ever " arranged for."

The evidence leaves no room for doubt as to defendant's intimate knowledge of the affairs of the contracting company of which he was the head. He knew the company was insolvent except as he backed it, and that there was very substantial ground for plaintiff's uneasiness. He soothed the suspicions of plaintiff's agents and induced them to refrain from canceling the contracts and to undertake their performance by making representations by which he intended to convince plaintiff's representatives that their pay was good. In this defendant succeeded. He must have appreciated that had plaintiff understood the true conditions it never would have continued the contracts. The position assumed by defendant in the transaction is not such as to entitle him to undue consideration.

The damages suffered by plaintiff are conceded, and it seems to me that every element necessary to be established by plaintiff to make out a *prima facie* case against the defendant was established by the evidence presented upon the trial.

The trial court having dismissed the complaint, the appellant is entitled to the most favorable inference on all questions of fact, and upon the question of fraud and deceit the plaintiff was entitled to go to the jury. The law is elementary that one who makes a statement of fact which he knows to be false for the purpose or apparent purpose of inducing another to act is liable for damage resulting from such false representation. At the time the defendant represented that the money had been arranged for to meet plaintiff's contracts, he knew that the Columbian Marble Company was entirely without funds, and he admits that up to that time no effort had been made to provide funds for the specific purpose of

meeting said contracts. Even if he was ignorant of the true condition of the company, his position of president and his assumption of knowledge as to the truth of his representations amounted to full knowledge thereof. (*Eaton, Cole & Burnham Co.* v. *Avery,* 83 N. Y. 31; *Rothschild* v. *Mack,* 115 id. 1.)

It was stated in *Hadcock* v. *Osmer* (153 N. Y. 604): " But while there must be a furtive intent, it may exist when one asserts a thing to be true which he does not know to be true, as it is a fraud to affirm positive knowledge of that which one does not positively know. Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud. (*Kountze* v. *Kennedy,* 147 N. Y. 124, 130.) "

Judge PECKHAM said, in *Rothschild* v. *Mack* (*supra*): " The member [of the firm] who made the representations  *  *  * either knew or he did not know of the financial condition of the makers of the note. If he did know it, then he knew that the note, as to both makers and indorsers, was without value. If he did not know its condition, he yet assumed to have actual knowledge of the truth of his statement  *  *  *. He certainly meant to convey the impression of actual knowledge of the truth of the representations he made,  *  *  * and he either knew such representations were false, or else he was conscious that he had no actual knowledge while assuming to have it and intending to convey such impression. If damage ensue, this makes an actionable fraudulent representation." (*Marsh* v. *Falker,* 40 N. Y. 562; *Meyer* v. *Amidon,* 45 id. 169.)

The law on this point is too well settled to require further citation of authorities.

The evidence of Hoops as to his having made payments to the Columbian Marble Company with which to meet its obligations long subsequent to the representations as to the money having been arranged for, affords no excuse for the false representations which he made at the time the contracts

were entered into with the manifest intent of lulling plaintiff's suspicions and inducing it to perform the contracts. Furthermore, the jury were not bound to believe his testimony in this respect, as he was an interested party to the action. The evidence clearly required the submission of the case to the jury, and the learned trial court erred in dismissing plaintiff's complaint at the close of the evidence.

The judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide event.

DOWLING and PAGE, JJ., concurred; CLARKE, P. J., and LAUGHLIN, J., dissented.

Judgment reversed and a new trial ordered, with costs to appellant to abide event.