The TRAVELERS INSURANCE COMPANY, Plaintiff,

v.

E. H. ANDERSON, Defendant.

Civ. A. No. 4029.

United States District Court
W. D. South Carolina,
Rock Hill Division.

Nov. 28, 1962.

Thomas B. Butler, L. Paul Barnes, Spartanburg, S. C., for plaintiff.

Hayes & Hayes, Billy D. Hayes, Rock Hill, S. C., James P. Mozingo, III, Darlington, S. C., John C. West (Murchison, West & Marshall), Camden, S. C., for defendant.

WYCHE, District Judge.

Plaintiff brings this action for a declaratory judgment seeking a determination that it has no obligation to the defendant by reason of the application of William Henry Taylor for a policy of accident or trip insurance. Taylor died following an automobile accident on September 30, 1961.

The defendant who was named as beneficiary in the application has filed an answer and counterclaim in which he seeks both actual and punitive damages from the plaintiff. Plaintiff has moved to dismiss the counterclaim, and failing in that, to strike certain parts thereof as well as certain parts of the answer.

Taylor, the deceased, on September 24, 1961, mailed to the plaintiff at its office in Columbia, South Carolina, an application for a policy of insurance, commonly known as "trip insurance". This application was received by the plaintiff at its office on the following day, September 25, 1961. The application was accompanied by a United States Money Order for $8.65, which was ten cents more than the required premium. In the space provided for the effective date of the policy, the original date was stricken out by typewriter and over it typed the date "9–27–61". Plaintiff contends that its employee Thelma Denny interpreted this date to be "9–21–61" instead of "9–27–61". However, an examination of the original application presented in court at the time of the argument shows that the date typed in is "9–27–61". Whether or not plaintiff's employee did so interpret the date and if so whether or not such

was warranted are factual questions which need not be determined at this time.

The policy application was for the three day period beginning September 27, 1961, which means that Taylor's death on September 30, 1961, was within the period of the coverage applied for. Plaintiff alleges in the complaint that a policy was written dated September 21, 1961, "but not issued".

Defendant's amended answer and counterclaim sets forth the application and charges that the plaintiff negligently, wilfully, wantonly and fraudulently failed to issue the policy as requested in accordance with the application and failed to take any action to issue the policy or reject the application until after the death of the insured as hereinafter set forth.

The defendant further charges that after learning of Taylor's death, the plaintiff by a series of fraudulent acts, attempted to mislead and deceive the defendant and deprive him of the proceeds of the policy which were rightfully his. The specific acts of fraud charged included the writing of a policy for a period which was not only erroneous but which had in fact already expired. Other acts charged include the failure to mail the policy or attempt to refund the premium until after defendant's attorneys had made demand for the proceeds of the policy.

Plaintiff's position is that it incurred no liability because no policy was issued. Defendant's contention is that the plaintiff is liable for the policy amount either on the theory of an implied acceptance because of inexcusable delay, or for negligence in failing to act promptly on Taylor's application. Defendant further contends that punitive damages should be awarded because of the fraudulent conduct and acts of the plaintiff.

Similar factual situations have been the subject of many prior decisions of our courts. Although the various courts are not unanimous in their holdings, the majority view is well established and

well reasoned. In his work Insurance Law and Practice, Mr. Appleman gives the majority rule and its reasoning, Volume 12, Section 7226, as follows: "The purpose and nature of life insurance contracts and duties which the insurer assumes under such contracts, and the manner in which such contracts are negotiated, impress such contracts and the relationship of the parties with characteristics unlike those incident to negotiations for contracts in ordinary commercial transactions, as respects liability of the insurer for failure to act promptly upon an application. The business of insurance is affected by public interest, the insurer being bound to furnish the indemnity which the state has authorized it to issue, or to decline to do so within such a reasonable time as will enable the applicant to act intelligently upon rejection. A claim based upon a promise to insure and failure to issue a policy is not based upon a contract of insurance; it is based rather upon the damages produced by the failure of the insurer to promptly perform the duty which the facts imposed upon it.

\* \* \* \* \* \*

"Principles of fair dealing would require that where the applicant has paid the first premium for the protection which he desires that the insurer act upon the application within a reasonable time. Since insurance companies are held to a broader legal responsibility than are parties to purely private contracts, having solicited and obtained an application for insurance, and having received payment of a premium, they are bound either to furnish indemnity or decline to do so within a reasonable time. If it intends to decline the policy, it must manifest its intention by return of the premium within a reasonable time."

The line of cases which holds that the insurance company is not liable either in contract or in tort for failure to act promptly upon an insurance application is termed "unreasonable" by Appleman in Section 7228.

In Couch on Insurance Second, Section 10.4, the following statement of the law is found: "Comparable to the principle hereinabove discussed, under which an insurer may incur liability in tort for unreasonable delay in acting on an application for insurance, is the rule that imposes tort liability upon an insurer for his negligent failure to issue a policy of insurance pursuant to an agreement to do so, or for the negligent delay of its agent in delivering a policy to the insured when the delivery was necessary to make the policy effective."

An interesting case containing an excellent discussion of the law is American Life Ins. Co. of Alabama v. Hutcheson (C.A.6), 109 F.2d 424 (cert. denied 310 U.S. 625, 60 S.Ct. 898, 84 L.Ed. 1397), by Circuit Judge Florence Allen. In that case the deceased applied for a policy of insurance from the defendant company on October 9th or 10th, 1935, and he paid the premiums and was examined on October 11th. There was a delay in issuing the policy because of questions about the blood pressure of the insured. The deceased will killed by accident on October 26, 1935. In upholding a judgment for the plaintiff, the Court held: "It is the general rule that mere delay of an insurer in acting upon an application by the insured which, when considered, would be rejected, does not fix liability upon the insurer from its date where the application is subject to the insurer's approval and the application provides that it shall not relate back unless the applicant is accepted. There is a well-recognized exception to this rule that the insurer will not be allowed to reject the application for the sole reason that the insured has died or loss has occurred before action was taken thereon (1) where it is shown that, but for the death or loss, the application would have been accepted and the policy issued, or (2) where there has been an unreasonable delay by the insurer in acting upon the application.

"The question of unreasonable delay is one of fact and turns upon the peculiar circumstances of each particular case.

Usually it is a question for the jury under proper instructions by the court.

\* \* \*

"It has long been established that the insurer may be held liable in tort for damages to an applicant for insurance where there has been unreasonable delay in acting on his application. This is because the business of life insurance is affected with a public interest, and the insurer is bound to furnish the indemnity the state has authorized it to furnish, or to decline to do so within such reasonable time as will enable the applicant to act intelligently upon rejection, or to take the consequences of his carelessness. (Citing cases)."

The case then goes on to dispose of the appellant insurance company's contention that the decisions cannot help the plaintiff in this case because she sued in contract instead of tort. The court held that under the circumstances there was an implied acceptance. The judgment for the plaintiff was affirmed.

South Carolina is committed to the majority view as is shown in the case of Moore v. Palmetto State Life Ins. Co., 222 S.C. 492, 73 S.E.2d 688. In that case the application for insurance was made on March 3, 1951, and rejected on March 19th, but testimony was that the insured was not notified of this rejection and was not told anything until after the death of her husband when she was tendered the twenty cents deposit. The conflicting views are set forth in the majority opinion by the late lamented Justice Oxner, namely that in some jurisdictions no legal duty arises to act upon an insurance application or to inform the applicant whether the offer is accepted or rejected. The theory of these cases is that where there is no contract there is no duty. In rejecting that theory and adopting the majority rule, the Court states: "The other view is that an insurance company is under a legal duty to take prompt action on an application for insurance and give timely notice to the applicant of its action, particularly where a deposit on the premium has been made, and that under certain circumstances an insurance company may incur liability for negligent delay in acting upon an application or in failing to notify the applicant after his application is rejected." The Court goes on to quote with approval Section 7226 of Appleman on Insurance Law and Practice.

Other earlier cases substantiating defendant's legal position include Williams v. Philadelphia Life Ins. Co., 105 S.C. 305, 89 S.E. 675; Tobacco Redrying Corp. v. U. S. F. & G. Co., 185 S.C. 162, 193 S.E. 426; Keller v. Provident Life & Accident Ins. Co., 213 S.C. 339, 49 S.E.2d 577.

■ Applications for accident or "trip" insurance are cases requiring prompt action on the part of insurance companies. The coverage applied for is usually for a limited period, three days in this case, to cover a special risk, an automobile trip, to take place on a particular date or dates. If action is not taken promptly on the application the period of requested coverage passes, the applicant has no insurance and the company has had no exposure or risk for the premium received. The law cannot condone the failure of the company under such circumstances to act promptly, and the courts should not allow the company to take advantage of its own wrong by using as a defense that no policy was issued or was effective.

■ As to whether the defendant's demand for punitive damages should be stricken, if the defendant's counterclaim is construed as an action in tort for negligence in failing to act on the application and if such negligence should be found to include wilful or wanton conduct, the jury should pass on the question of punitive damages under well established tort principles.

If, on the other hand, the counterclaim is considered as an action for breach of contract accompanied by fraudulent acts, the charges of fraudulent acts will support punitive damages under the well-recognized South Carolina principle. Cases with analogous facts in which puni-

tive damages have been awarded include, Barber v. Industrial Life & Health Ins. Co., 189 S.C. 108, 200 S.E. 102; Henderson v. Capital Life & Health Ins. Co., 199 S.C. 100, 18 S.E.2d 605; Bradley v. Metropolitan Life Insurance Co., 162 S.C. 303, 160 S.E. 721; Williams v. Commercial Casualty Ins. Co., 159 S.C. 301, 156 S.E. 871.

For the foregoing reasons, it is my opinion that the plaintiff's motion to dismiss, and in the alternative to strike, should be and the same is hereby denied, and

It is so ordered.