MAYNARD & CHILD, Inc., a Massachusetts Corporation, Appellant,

v.

Guy C. SHEARER, Commissioner of the Department of Alcoholic Beverage Control, et al., Appellees.

Court of Appeals of Kentucky.

Dec. 2, 1955.

As Modified on Denial of Rehearing June 22, 1956.

Booth, Booth & Humphrey, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Hal Williams, Asst. Atty. Gen., for appellees.

E. Gaines Davis, Jr., Frankfort, Ky., Smith, Reed & Leary, Frankfort, Ky., amicus curiae.

HOGG, Judge.

Maynard & Child, Inc., instituted a declaratory judgment suit in the Franklin Circuit Court whereby it sought the restoration to it of certain whiskey it had shipped by interstate carrier from Maryland to Kentucky, which was seized in transit by the appellee, Guy C. Shearer, Commissioner of the Department of Alcoholic Beverage Control. The appellee threatened to confiscate the whiskey for non-payment of import and consumer taxes. Shearer filed a general demurrer to the petition and, without waiving the demurrer, an answer which alleged that the shipments of whiskey seized by him were unstamped, tax stamps not being affixed thereto, in violation of the statutes of Kentucky. The Commissioner of the Department of Revenue, who was made a party to the action, filed a counterclaim to recover back taxes, alleging that between October, 1945 and July, 1949, appellant had shipped large amounts of whiskey from Baltimore, Maryland, to Ft. Knox, Kentucky, without the payment of state import taxes, as provided by KRS 243.680(2), and without payment of the consumers' taxes as imposed by KRS 243.720. A special demurrer was interposed to the counterclaim and, without waiving the demurrer, an agreed order controverting of record the allegations of the counterclaim was entered. The judgment of the lower court sustained the demurrer to the petition and adjudged that the whiskey be forfeited and sold as contraband. The counterclaim for back taxes aggregating the sum of $2,099.78 was sustained.

■ At the outset, we are of the opinion that that part of the judgment allowing recovery on the counterclaim cannot be sustained under any consideration. Aside from the fact that the order controverting of record put in issue the allegations of the counterclaim, this case was practiced in its entirety under the old Rules and was thereby governed by Civil Code of Practice, section 96. It is there stated that a counterclaim is a cause of action in favor of a defendant which arises out of the *transactions* stated in the petition as the foundation of the plaintiff's claim, or which is connected with the *subject* of the action. The whiskey delivered to Ft. Knox during the period from 1945 to 1949 is not a part of the transaction set forth in the petition, nor is it connected with the subject of the action; i. e., the whiskey seized.

We next consider the petition as amended, and the tendered second amended and supplemental petition which the trial court would not permit to be filed. The substance of the petition as amended is that a Club or Association was formed at Ft. Knox, Kentucky, by officers of the United States Army under Army regulations, which regulations are set forth in pamphlet form filed as an exhibit. The Association purchased liquor for its members from time to time from Maynard & Child, Inc. The Army regulations referred to, issued by order of the Chief of Staff of the Army, provided that such Clubs or Associations are "integral parts of the Military Establishment * * * and are entitled to the immunities and privileges of such instrumentalities" and are entitled to the same immunity from state and local taxes as are other instrumentalities of the United States. The purchasing agent of the Club, Lt. Babin, for and on behalf of the members of said Club, ordered from Maynard & Child during the months of March and April, 1949, shipments of whiskey with the understanding and agreement between Maynard & Child and the Association that the purchase price would be paid after delivery of the whiskey to the Club at Ft. Knox, Kentucky. Commissioner Shearer seized the whiskey in transit in Louisville, Kentucky, where it was being transferred from the Universal Car Loading and Distributing Company of Baltimore, Maryland, to the Meade County Transfer Company, a local carrier.

As a part of the petition, appellant filed the bills of lading as exhibits. These bills of lading, covering the shipments in controversy, are straight bills of lading and indicate these shipments of liquor were

turned over to the interstate carrier by appellant and were consigned to Lt. Babin at Ft. Knox, "Frt collect." Also filed with the petition as exhibits were the invoices covering these shipments addressed to Lt. Babin, in care of "Officers' Club, Hdq. U. M. T. E. U. ASU 2828 Ft. Knox, Kentucky." The terms of the sale as indicated on the invoices are: "Terms: Net 10 days f. o. b. Baltimore—via Universal Carloading Co."

The petition alleged that the import and consumer taxes had not been paid. The prayer of the petition as amended was that (1) the Officers' Club be declared an instrumentality of the United States exempt from state taxes, and (2) the whiskey seized be restored.

Several months prior to the entry of the judgment in the court below, Maynard and Child tendered and offered to file an amended petition which alleged that under the terms of the sales the title to such goods would not pass to the Club as buyer until after delivery of the goods at Ft. Knox, and under the agreement of the parties title to the property did not pass from it until the goods were actually delivered to the Club at Ft. Knox, or to Lt. Babin. Apparently, the court below did not permit the second amended and supplemental petition to be filed because the court believed it contained allegations contradictory of the exhibits filed in support of the original petition. As will appear from our discussion hereafter, we do not believe such pleading contradicted the exhibits. We are of the opinion that such second amended and supplemental petition should have been filed and we will treat it as having been filed, in our decision of this case.

It is the contention of appellee Shearer that the action of the lower court in dismissing the petition as amended and in rendering the judgment was proper because, under the pleadings of appellant and considering the exhibits filed therewith, title to the whiskey had passed from appellant and, therefore, since appellant did not have title to the whiskey, it cannot recover possession of the whiskey. It is his contention that title to the whiskey passed to Lt. Babin when it was delivered to the carrier, f. o. b. Baltimore, and invoiced to Lt. Babin according to the exhibits filed.

Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. KRS 361.190(1) and (5) provide:

"(1) Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

"(5) If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, * * * the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

The allegations of the petition would seem to bring the case within the rule stated in subsection (5), and particularly so in view of the second amended petition which alleged an oral contract by which title was to pass on delivery. If an exhibit referred to and filed contradicts an allegation of the pleading, the exhibit will control unless it is impeached or explained by the facts stated in the pleading. Durham v. Elliott, 180 Ky. 724, 203 S.W. 539; Black v. O'Hara, 175 Ky. 623, 194 S.W. 811. We believe that the proffered petition *explains* the exhibits filed rather than *contradicts* them. If title to the whiskey remained in appellant, as the allegations of its pleadings would lead us to believe, we are then confronted with the legality of the seizure. Whether it was legal in turn depends on whether the Officers' Club at Ft. Knox is an instrumentality of the United States and thus exempt from state taxation under the Buck Act.

The Congress of the United States, in the year 1940, passed a resolution generally known as the Buck Act. 4 U.S.C.A. §

105 et seq., receding to the states sufficient sovereignty to collect taxes, in certain circumstances, in Federal areas. Section 105 (a) provides:

> "No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State * * * having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

However, in section 107(a) is found the following exception:

> "The provisions of sections 105 and 106 of this title shall not be deemed to authorize the levy or collection of any tax on or from the United States or any *instrumentality* thereof, or the levy or collection of any tax with respect to sale, *purchase*, storage, or use of tangible personal property sold by the United States or any *instrumentality* thereof to any authorized purchaser." (Emphasis supplied.)

Appellant insists that the Officers' Association at Ft. Knox was an instrumentality of the United States and not subject to the imposition of import or consumers' taxes by this state. In Falls City Brewing Co. v. Reeves, D.C., 40 F.Supp. 35, the Ft. Knox Post Exchange was held to be an instrumentality of the United States within the meaning of the Buck Act, precluding this state from imposing its statutory provisions on the sale of malt beverages by a brewing company to the post exchange. The Supreme Court, in 1942, authoritatively settled the question that Army post exchanges are instrumentalities of the United States. See Standard Oil Co. of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611. See, also, 53 C.J.S., Licenses, § 31(6), page 614; 140 A.L.R.

632. However, we are cited to no case, nor has our research revealed any case holding an officers' club to be an instrumentality of the United States within the meaning of the Buck Act. Thus we are presented with a federal question of first impression.

In Standard Oil Co. of California v. Johnson, supra, a distributor sold gasoline to an Army post exchange in California. The state levied a tax which was paid under protest. The California Supreme Court, in construing their Motor Vehicle Fuel License Tax Act, St.1923, p. 572 as amended Revenue and Taxation Code, § 7301 et seq., which exempted from taxation fuel sold to the United States or any department, held that a post exchange was not "'the government of the United States or any department thereof.'" This determination involved an interpretation of the relationship between post exchanges and the United States government, a relationship controlled by federal law. The United States Supreme Court reversed, holding a post exchange to be an instrumentality of the United States. Mr. Justice Black, in the course of the opinion, stated:

> "For post exchanges operate under regulations of the Secretary of War pursuant to federal authority. These regulations and the practices under them establish the relationship between the post exchange and the United States government, and together with the relevant statutory and constitutional provisions from which they derive, afford the data upon which the legal status of the post exchange may be determined."

The Court rested its conclusion on three grounds: (1) The establishment of post exchanges was in accordance with congressionally authorized War Department regulations of legal force; (2) Congress had recognized these activities as governmental, and without profit to individuals but with a view to improving the soldiers' mess; (3) the commanding officer of the post has control over the exchanges; they are conducted by officers under post regulations who are responsible for and handle

the funds, though receiving only their regular salary, and though the government assumed none of the financial obligations of the exchange.

In Johnson v. Yellow Cab Transit Co., 10 Cir., 1943, 137 F.2d 274, members of an officers' club on a military reservation in Oklahoma, through their secretary, gave their combined orders for intoxicating beverages, which orders were forwarded to an Illinois seller, who in turn made shipment. State enforcement officers in Oklahoma confiscated the liquor before it reached the military reservation, on the ground it was an illegal shipment contrary to Oklahoma statute, 37 O.S.1951 § 1 et seq. Had the shipment been delivered at the reservation, it would have been received by the secretary of the club for delivery to the officers who had placed the order. The Court held the liquor could not be seized and confiscated on the ground that the state had no power to prohibit importation into a military reservation, or to regulate it within the reservation, since it was not a part of the State of Oklahoma. This case was not one involving taxation of a federal instrumentality, it is true. However, it tends to support the inference that an officers' club is part of the military make-up, as provided for in the Army regulations.

The pleadings in this case allege that the Club was organized under Army regulations, authorized by the War Department. It is the pronouncement of the War Department that these clubs are integral parts of the military establishment, being wholly owned government instrumentalities entitled to immunity from state taxes as other instrumentalities of the United States. This War Department regulation is, of course, not binding on this court, but is entitled to be given weight. While a post exchange provides for various services, an officers' club provides for an officers' mess and various other recreational services for the members. They are subject to the control of the commanding officer of an Army post and managed by Army officers. We see little difference in legal character and legal contemplation between a post exchange and an officers' club. We, therefore, hold the officers' club to be an instrumentality of the United States, within the meaning of the Buck Act, and accordingly exempt from state taxation, unless it can be proved that the officers here involved got together for the purpose of avoiding the prohibition against the sale of liquor imposed by section 38, Act of Congress, February 2, 1901, 31 Stat. 758, 10 U.S.C.A. § 1350, or unless the proof shows that the association of officers was not in fact an officers' club under the War Department regulations. In arriving at this conclusion, we treat all of the well-pleaded facts alleged as true, and we do not attempt to pass upon any issues that might be properly raised in any other proceeding.

The questions we have discussed with reference to the Buck Act have relation only to the applicability of the excise tax imposed by KRS 243.720. The import tax imposed by KRS 243.680 stands upon a different basis, because it is neither a "sales" tax nor a "use" tax, and therefore it is not a kind of tax that Congress, through the Buck Act, has consented may be collected by the states upon transactions occurring within Federal areas. The question of whether the import tax may be collected in the case before us depends solely upon whether this whiskey has been shipped or transported "into" Kentucky. KRS 243.680 (2) (a).

It is our opinion that the whiskey in question, shipped by common carrier from Pennsylvania to a consignee located within a Federal area over which Kentucky has ceded all jurisdiction, was not being imported "into" Kentucky within the meaning of the tax statute. The situation is the same as if the whiskey was merely passing through Kentucky on its way to a consignee in Missouri or Illinois. It was not intended to come to rest in any place over which Kentucky has jurisdiction.

The Yellow Cab case earlier mentioned, Johnson v. Yellow Cab Transit Co., 10 Cir., 137 F.2d 274, is direct authority for the opinion we have expressed. See also Standard Oil Co. v. People of State of Cal-

ifornia, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775; Pacific Coast Dairy v. Department of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761. Accordingly, we hold that this import tax is not applicable.

The judgment is reversed, with directions to dismiss the counterclaim; to permit the amended and supplemental petition to be filed; to overrule the demurre to the petition; and for further proceedings in conformity with this opinion.

STEWART, C. J., and CAMMACK and SIMS, JJ., dissent from so much of the opinion as holds that the Officers' Club is a Federal instrumentality within the meaning of the Buck Act.