Kenneth **SANDBULTE** and Florence Sandbulte, Appellants,

v.

**FARM BUREAU MUTUAL INSURANCE CO.**, Richard L. Simonson and Gary L. Horstman, Appellees.

No. 83–314.

Supreme Court of Iowa.

Jan. 18, 1984.

Randall A. Roos, Sioux Center, for appellants.

Wendell Pendleton and W. Ted Brown of Pendleton Law Firm, P.C., Storm Lake, for appellee Farm Bureau Mut. Ins. Co.

Marvin F. Heidman and Lance D. Ehmcke of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for appellees Simonson and Horstman.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and CARTER, JJ.

McGIVERIN, Justice.

Plaintiffs' petition consisted of two counts. Count I asserted a claim against defendant Farm Bureau Mutual Insurance Co. (FBM) alleging the breach of an implied good faith duty to defend insured against a third party claimant. Count II asserted a claim against defendants Simonson, Horstman and FBM alleging the breach of an implied expanded agency agreement. Plaintiffs contend that the trial court improperly relied upon a two year statute of limitations, Iowa Code section 614.1(2), in sustaining defendant Farm Bureau Mutual Insurance Co.'s motion for summary judgment with respect to Count I. They argue that this claim's timeliness should be measured by the five year statute of limitations for claims based on "unwritten contracts" provided for in Iowa Code section 614.1(4). We agree and therefore reverse the trial court's entry of summary judgment for defendant FBM on Count I of plaintiffs' petition. Plaintiffs further contend that the court erred in granting defendant FBM's and defendants Simonson and Horstman's separate motions for summary judgment in disposition of plaintiffs' claim for negligent breach of an implied expanded agency agreement. They argue again that the court erred by not applying a five year statute of limitation, section 614.1(4), to this claim and also that this claim was not a compulsory counterclaim to defendant FBM's prior declaratory judgment action. We agree with both of these contentions and therefore reverse the entry of summary judgment for defendant FBM on Count II of plaintiffs' petition. However, the court was correct in entering summary judgment for defendants Simonson and Horstman based on their argument, not asserted by FBM in its separate motion, that the uncontroverted facts failed to establish the existence of an implied expanded agency agreement. We, therefore, affirm the court's entry of summary judgment for defendants Simonson and Horstman. We also affirm the trial court's implicit denial of plaintiffs' motion for partial summary judgment as to Count I due to the existence of a genuine issue of material fact concerning the question of FBM's good faith defense of Sandbulte.

This case was commenced on October 22, 1981, and arose out of events that were set in motion by a collision involving a pickup truck driven by Wendell Sandbulte—owned by his father Kenneth Sandbulte—and a motorcycle operated by Kenneth Vander Lugt on April 22, 1976. Vander Lugt suffered serious injuries as a result of this accident which was indisputably the fault of Wendell Sandbulte who failed to yield the right of way at a road intersection. A personal injury lawsuit against Kenneth and Wendell Sandbulte was commenced by Vander Lugt on April 20, 1978.

At the time of this accident, Kenneth Sandbulte owned an automobile insurance policy with a liability limit of $50,000 and a farm liability policy with a limit of $300,000. Both of these policies were issued by Farm Bureau Mutual Insurance Co.

Sandbulte and Vander Lugt negotiated, through their counsel, in an attempt to settle the Vander Lugt claim. These negotiations were hampered by the unsettled question of the extent of Sandbulte's liability coverage under his insurance policies. FBM agreed to tender the full $50,000 limit on the automobile policy. However, FBM claimed that Sandbulte's liability arising out of the accident was not covered by the contractual terms of the farm liability policy and, therefore, refused to tender any amount under this policy for settlement purposes.

In an attempt to resolve the coverage question, FBM filed a declaratory judgment action against both Kenneth Sandbulte and Vander Lugt on April 24, 1979, seeking a judicial interpretation of its contractual obligations to Sandbulte under the farm liability policy. This action was ultimately decided by this court in *Farm Bureau Mutual Ins. Co. v. Sandbulte*, 302 N.W.2d 104 (Iowa 1981), in which we found that Sandbulte was not covered, as to the Vander Lugt accident, by the farm liability policy.

Shortly after FBM's declaratory judgment action was filed, Sandbulte and Vander Lugt settled the Vander Lugt suit for $375,000. The terms of this settlement, to be effective as of May 25, 1979, provided for Sandbulte to pay $25,000 in addition to the $50,000 tendered by FBM under the automobile policy, with the remaining $300,000 entered as a consent judgment against Kenneth and Wendell Sandbulte. Execution on the consent judgment was ordered withheld until final disposition of the declaratory judgment action at the trial court level, which occurred on October 28, 1979.

Our decision on the declaratory judgment action in *Sandbulte* was filed on February 18, 1981. Execution on the consent judgment commenced shortly thereafter resulting in the Sandbulte farm being sold at a sheriff's sale to Vander Lugt on July 15, 1981.

This action was then commenced by plaintiffs Kenneth Sandbulte and his wife, Florence Sandbulte, on October 22, 1981. The petition consisted of two counts. Count I asserted a claim against defendant Farm Bureau Mutual Insurance Co. alleging the breach of an implied good faith duty to defend the insured under the automobile insurance policy against third party claimants. Count II asserted a claim against defendants insurance agents Simonson and Horstman and FBM alleging the breach of an implied expanded agency agreement to "advise plaintiffs of the extent of their liability insurance coverage, and suggest and implement for plaintiffs proper, complete and adequate liability insurance coverage."

Separate motions for summary judgment were filed by the plaintiffs, FBM, and Simonson and Horstman. The trial court entered summary judgment for FBM on Counts I and II holding that the applicable statute of limitations was section 614.1(2) which barred both of plaintiffs' counts and, furthermore, that plaintiffs' second count also was barred by Iowa R.Civ.P. 29 because it was a compulsory counterclaim to FBM's declaratory judgment action. Summary judgment also was entered for defendants Simonson and Horstman as to Count II based on the court's holding that the statute of limitations barred this action, and, in addition, the court found that the plaintiffs "failed to show as a matter of law any duty or breach of duty to perform in an expanded agency relationship, or of any duty to the Plaintiffs in the acquisition of insurance."

On appeal, plaintiffs raise several issues.

I. *As to Count I.* Plaintiffs argue that the trial court's entry of summary judgment for FBM on Count I was erroneous because the court did not apply the appropriate statute of limitations.

A. *Appropriate statute of limitations.* Sandbultes contend that section 614.1(4) is the appropriate statute of limitations for a cause of action based on the breach of an insurer's good faith duty to defend an insured against third party claimants and that the court erred by relying on section 614.1(2).

Iowa Code subsections 614.1(2), (4) (1981) provide for two separate statutory periods for limiting particular types of legal actions as follows:

Actions may be brought within the times herein limited, respectively, after their causes *accrue*, and not afterwards, except when otherwise specially declared:

. . . .

2. *Injuries to person or reputation—relative rights—statute penalty.* Those *founded* on injuries to the person or reputation, including injuries to rela-

tive rights, whether based on contract or tort, or for a statute penalty, within *two years.*

. . . .

4. *Unwritten contracts—injuries to property—fraud—other actions.* Those *founded* on unwritten contracts, ... and all other actions not otherwise provided for in this respect, within *five years....*

(Emphasis added.)

■ In determining the appropriate statute of limitations for a specific cause of action, the Code requires us to look to the *foundation* of the action. This means that the appropriate statute of limitations is to be ascertained by characterizing the actual nature of the action. *Clark v. Figge,* 181 N.W.2d 211, 213 (Iowa 1970).

We have said that an excess liability claim against an insurer based on its bad faith handling of a third party claim against its insured is a claim *based* on the *implied covenant* of good faith found in the insurance contract. *Kooyman v. Farm Bureau Mutual Insurance Co.,* 315 N.W.2d 30, 33 (Iowa 1982). Furthermore, this court has consistently held that contracts implied in law or by operation of law are regarded as "founded on unwritten contracts" so far as the applicable period of limitation is concerned. *In re Trust of Lunt,* 237 Iowa 1097, 1101, 24 N.W.2d 467, 469 (1946); *Anderson v. Anderson,* 234 Iowa 277, 285, 12 N.W.2d 571, 575–76 (1944). *See also Keen v. Mid-Continent Petroleum Corp.,* 58 F.Supp. 915, 922 (N.D.Iowa 1945).

■ It follows, therefore, that section 614.1(4), which provides a five year statute of limitations for actions founded on "unwritten contracts," is the appropriate statute of limitations for an action based on an insurer's breach of a good faith duty to defend an insured against third party claimants.

We note that this result is not affected by the elements of damages sought for this claim. It is the nature of the right sued upon and not the elements of relief requested that governs the selection of the appropriate statutory period for the basic right.

■ B. *Accrual of claim.* Actual application of the appropriate statutory period to a particular case requires the determination of when the claim accrued. Iowa Code § 614.1. The trial court found that plaintiffs' action against FBM for the alleged breach of its good faith duty to defend the insured against third party claimants accrued on May 25, 1979, the day on which the settlement and judgment in the Vander Lugt case became effective against Kenneth Sandbulte. We agree.

■ The general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit. *Chrischilles v. Griswold,* 260 Iowa 453, 461, 150 N.W.2d 94, 99 (1967). Such a right exists when "events have developed to a point where the injured party is entitled to a legal remedy." *Stoller Fisheries, Inc. v. American Title Ins. Co.,* 258 N.W.2d 336, 341 (Iowa 1977). Furthermore, the discovery doctrine provides that a cause of action does not accrue until plaintiff has in fact discovered that he or she has suffered injury or by the exercise of reasonable diligence should have discovered it. *Chrischilles,* 260 Iowa at 463, 150 N.W.2d at 100.

■ Plaintiffs' action is founded on FBM's alleged breach of its good faith duty to properly defend the Sandbultes in the Vander Lugt personal injury lawsuit. The final disposition of that case, the settlement and judgment effective May 25, 1979, terminated FBM's duty to defend the Sandbultes. Because the insurer cannot breach a duty that no longer exists, the alleged breach complained of occurred as of the date of settlement and judgment when Sandbulte became obligated to pay at least $25,000 of his own money to Vander Lugt. Therefore, we conclude Sandbultes' right to institute and maintain a suit for an insurer's breach of its good faith duty to defend matured on May 25, 1979, and such date serves as the claim accrual date for purposes of measuring the applicable five year

statute of limitations. *Cf. Israel v. Farm-ers Mutual Ins. Assoc. of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983) ("[Insurance agent's] claim for indemnity [against insurer] did not accrue until judgment was entered against him.")

We reverse the entry of summary judgment for defendant FBM on Count I of plaintiffs' petition based on our finding that the appropriate period for bringing this action is five years to be measured from May 25, 1979. Plaintiffs' petition filed on October 22, 1981, is clearly within this five year period.

II. *As to Count II.* Plaintiffs also contend that the trial court's entries of summary judgment for FBM and defendants Simonson and Horstman on Count II were erroneous because the court did not apply the appropriate statute of limitations, misapplied Iowa R.Civ.P. 29 on compulsory counterclaims, and improperly found no genuine issue as to any material fact.

■ A. *Appropriate statute of limitations.* Plaintiffs' contention in Count II, that defendants breached an implied expanded agency agreement to "advise plaintiffs of the extent of their liability insurance coverage, and suggest and implement for plaintiffs proper, complete and adequate liability insurance coverage," is a claim founded on damages arising from an unwritten contract. Relying upon the legal framework set forth in division I–A, we conclude that the timeliness of this claim is determined by section 614.1(4) which provides a five year statute of limitations for claims founded on unwritten contracts.

■ B. *Accrual of claim.* We conclude Sandbultes' second claim also accrued on May 25, 1979, the date on which they became legally obligated to pay Kenneth Vander Lugt at least $25,000. This event marks the initial discovery by Sandbultes of a legal obligation to expend their own funds to satisfy the Vander Lugt claim. Prior to settlement and judgment, the threat of insufficient liability insurance coverage was purely speculative. A suit for breach of an implied expanded agency

agreement to advise and implement adequate liability insurance coverage cannot be instituted and maintained until the insured has become legally obligated, in excess of his liability coverage, to a third party.

Plaintiffs' petition filed on October 22, 1981, was clearly filed within five years of May 25, 1979. Therefore, the statute of limitations does not bar plaintiffs' second claim.

C. *Compulsory counterclaim.* Iowa R.Civ.P. 29 provides:

A pleading must contain a counterclaim for every cause of action then matured, and not the subject of a pending action, held by the pleader against any opposing party and *arising out of the transaction or occurrence that is the basis of such opposing party's claim,* unless its adjudication would require the presence of indispensable parties of whom jurisdiction cannot be acquired. A final judgment on the merits shall bar such a counterclaim, although not pleaded.

(Emphasis added.)

■ We conclude that plaintiffs' claim for breach of an implied expanded agency agreement to advise and implement adequate liability insurance coverage was not a compulsory counterclaim to defendant FBM's declaratory judgment action because a claim against an insurer for the neglect of its agents is a claim based on an altogether different transaction or occurrence than a declaratory judgment suit seeking an interpretation of policy coverage. *United States Fire Ins. Co. v. Parks*, 239 N.C. 680, 80 S.E.2d 641 (1954); 22 Am.Jur.2d *Declaratory Judgments* § 89 (1965).

The claim against FBM for the neglect of its agents was founded on an alleged breach of an implied expanded agency agreement between Sandbulte and defendants Simonson and Horstman in which the latter allegedly were to provide a comprehensive analysis of Sandbulte's insurance needs. This is a separate and distinct transaction or occurrence than the specific farm liability insurance contract issued by

FBM and purchased by Sandbulte which was the underlying transaction or occurrence from which FBM's declaratory judgment action arose. In other words, these transactions were based on two separate and distinct agreements and thus cannot be considered to have arisen from the same transaction or occurrence.

D. *Factual basis for summary judgment.* Defendants Simonson and Horstman also argued before the trial court that they were entitled to summary judgment as a matter of law because there was no genuine issue as to any material fact concerning the alleged implied expanded agency agreement.

■■■ Iowa R.Civ.P. 237(c) provides that summary judgment will be granted only when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of showing there is no genuine issue of material fact is upon the moving party. *Colonial Baking Co. of Des Moines v. Dowie,* 330 N.W.2d 279, 282 (Iowa 1983). In considering such a motion, a court is required to examine the record in the light most favorable to the party opposing the motion to determine whether the movant has met his burden. *Walker Shoe Store, Inc. v. Howard's Hobby Shop,* 327 N.W.2d 725, 728 (Iowa 1982).

■■ The record, even when viewed in the light most favorable to plaintiffs, does not present a genuine issue of material fact concerning the existence of an expanded agency agreement to advise and implement adequate liability insurance coverage for the Sandbultes.

Plaintiffs' action is based on our language in *Collegiate Mfg. Co. v. McDowell's Agency, Inc.,* 200 N.W.2d 854, 859 (Iowa 1972), which states that "there *could* have been delegated to defendant [insurance agent] the burden of deciding for plaintiff both the type and amount of insurance to be provided...." This would, however, require an "agreement or arrangement which would enlarge defendant's duty beyond the general duty an agent owes his principal."

*Id.* at 857–58. We said such general duty is the duty to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured. *Id.* at 858.

■■■ An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured. *Hardt v. Brink,* 192 F.Supp. 879, 880–81 (W.D.Wash.1961) (agent assumed a duty to advise plaintiff as to his insurance needs when such agent held himself out to be a highly skilled insurance advisor and insured relied upon him as such); *Nowell v. Dawn-Leavitt Agency, Inc.,* 127 Ariz. 48, 51–52, 617 P.2d 1164, 1168 (Ct.App.1980) (imposition of liability for agent's failure to advise client of need for coverage should be confined to situations where insurance counselor is receiving consideration for his services apart from premiums to be paid by insured or there is a long-established relationship of entrustment between insurance counselor or agent and client from which it clearly appears that the counselor appreciated that there was a duty to take the initiative in giving comprehensive advice to his client on insurance matters); 16A Appleman, *Insurance Law & Practice* § 8836, at 64–66 (1981) ("Ordinarily, of course, an insurance agent assumes only those duties normally found in an agency relationship ... and he assumes no duty to advise the insured merely by such relationship. However, where an agent holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particularly where such needs have been brought to the agent's attention. And in so doing, he may be held to a higher standard of care than that required of the ordinary agent since he is acting as a specialist. Accordingly, the agent may be liable to an insured for the damage suffered by his failing to inform him as to a poten-

tial source of loss and by his failing to recommend insurance therefor.").

A review of the record discloses no evidence in support of Sandbultes' claim that they entered into an agreement with Simonson and Horstman creating an expanded agency relationship in which Simonson and Horstman were to advise, suggest, counsel and procure adequate liability insurance for the plaintiffs. The record does suggest that plaintiffs purchased insurance from defendants Simonson and Horstman for several years and received satisfactory service from them which might imply the existence of an implied expanded agency agreement in accordance with *Nowell*. We held in *Collegiate*, however, that this type of relationship does not suggest or imply the existence of an expanded agency agreement:

> It is true plaintiff relied on defendant, had great confidence in him, and frequently followed his advice on insurance matters; but this is usually the case. There is no evidence of any agreement, express or implied, that defendant was to assume responsibility far beyond that which would normally attach to his conduct as plaintiff's agent. The principal-agent relationship cannot be so drastically expanded unilaterally.

200 N.W.2d at 858.

The record does indicate, however, that by deposition Kenneth Sandbulte testified that he asked Gary Horstman for "sufficient coverage" on his automobile and that he was assured that his auto policy provided "sufficient coverage." However, we note that this exchange, which occurred while discussing the merits of the $50,000 auto policy, is the type of conversation that usually takes place within the context of the general principal-agent relationship. Purchasers of insurance generally seek "sufficient coverage." To permit a conversation such as this to serve as the basis for an issue of fact leading to a finding of an expanded principal-agent relationship would in substance make the agent a blanket insurer for his principal.

We conclude that merely asking for "sufficient coverage" is an insufficient factual basis for asserting the existence of an expanded agency agreement and, therefore, defendants Simonson and Horstman are entitled to summary judgment as a matter of law. *See Nowell v. Dawn-Leavitt Agency, Inc.*, 127 Ariz. at 52–53, 614 P.2d at 1168–69 (agent entitled to summary judgment, in suit based on the agent's alleged failure to advise and procure adequate insurance coverage, where insured, in requesting homeowner's policy, directed agency to obtain "the best policy," because such direction did not amount to a meeting of minds as to contract to procure policy covering all foreseeable risks). *See also Manzer v. Pentico*, 209 Neb. 364, 307 N.W.2d 812 (1981) (summary judgment granted for defendant insurance agent); *Fleming v. Torrey*, 273 N.W.2d 169 (S.D.1978).

Based on our findings that plaintiffs' second claim is not barred by the statute of limitations or the compulsory counterclaim rule, we reverse the trial court's entry of summary judgment for defendant FBM as to Count II of plaintiffs' petition. However, we affirm the trial court's entry of summary judgment for defendants Simonson and Horstman as to Count II of plaintiffs' petition as they are entitled to summary judgment as a matter of law.

III. *Sandbultes' motion for summary judgment.* Plaintiffs' motion for summary judgment as to Count I was implicitly denied by the trial court's entry of summary judgment for defendants and they now ask us to grant their motion for partial summary judgment. Plaintiffs' motion for partial summary judgment asserts that FBM has failed the "no limits" test of good faith set forth in *Kooyman v. Farm Bureau Mutual Ins. Co.*, 315 N.W.2d 30, 34 (Iowa 1982), and, therefore, is liable, as a matter of law, for the Sandbultes liability to Vander Lugt in excess of $50,000 automobile policy coverage. Without extending this opinion, we conclude the record does not establish FBM's bad faith as a matter of law and, therefore, plaintiffs are not entitled to summary judgment. We affirm

the trial court's denial of plaintiffs' motion for partial summary judgment as to Count I.

■ IV. *Alternative concerns.* We do not pass on alternative arguments and matters set forth in defendants' motions for summary judgment that were not specifically addressed by the trial court's ruling.

■ V. *Costs on appeal.* We overrule defendants Simonson and Horstman's objection to plaintiffs' designation of parts of the record to include in the appendix and, in view of our disposition of this case, direct that court costs be apportioned one-half to plaintiffs and one-half to defendant FBM.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

All Justices concur except UHLENHOPP, P.J., who concurs specially.

UHLENHOPP, Presiding Justice (concurring specially).

I concur in the result and in all of the majority opinion except the majority's reason for the result in division II–C.

I. I think the words "transaction or occurrence that is the basis for such opposing party's claim" in rule 29 of the rules of civil procedure should be given a liberal rather than a strict construction so that all contentions in a controversy are disposed of in a single action to avoid multiplicity of suits. *See Walters v. Iowa-Des Moines National Bank,* 295 N.W.2d 430, 432 (Iowa 1980) ("Rule 29 has as its objective the avoidance of a multiplicity of suits."); *Harrington v. Polk County Federal Savings & Loan Ass'n,* 196 N.W.2d 543 (Iowa 1972).

Essentially the dispute between FBM and Sandbulte was whether FBM had to hold Sandbulte harmless beyond $50,000 on account of Sandbulte's tort liability to Vander Lugt growing out of the motor vehicle collision. In claiming that FBM did have to hold him harmless, Sandbulte had more than one string on his bow. His first string was his claim that the farm liability policy also covered his liability to Vander Lugt. Another string was his claim that FBM's agents failed to advise him about adequate coverage so that he would be properly protected.

I think that when FBM sued Sandbulte for a declaration that the farm liability policy did not cover Sandbulte's liability to Vander Lugt, Sandbulte could not simply claim that the policy did in fact cover his liability and keep back his claim that FBM nonetheless had to hold him harmless on the ground its agent failed to advise him about adequate coverage. If Sandbulte could keep back that second claim, he could string out the ultimate answer through two or more litigations instead of obtaining it in one case. That is not my conception of the purpose of the compulsory counterclaim requirement.

The general rule is that counterclaims can be interposed in declaratory judgment actions to set up the defendant's side of the controversy. *Travelers Ins. Co. v. Anderson,* 210 F.Supp. 735 (C.D.S.C.1962); *Allstate Ins. Co. v. Smith,* 169 F.Supp. 374 (E.D.Mich.1959), *mandamus denied,* 264 F.2d 38 (6th Cir.1959); *Adams v. Bear,* 87 Ariz. 288, 350 P.2d 751 (1960); *Ramirez v. Hardware Dealers Mutual Fire Ins. Co.,* 170 So.2d 317 (Fla.App.1964); *Maynard & Child, Inc. v. Shearer,* 290 S.W.2d 790 (Ky.1955); *Mobil Oil Corp. v. Attorney General,* 361 Mass. 401, 280 N.E.2d 406 (1972); *Missouri Managerial Corp. v. Pasqualino,* 323 S.W.2d 244 (Mo.App.1959); *Denbina v. City of Hurst,* 516 S.W.2d 460 (Tex.Civ.App.1974); *Gwinn v. Church of Nazarene,* 66 Wash.2d 838, 405 P.2d 602 (1965); *see Jorge Const. Co. v. Weigel Excavating & Grading Co.,* 343 N.W.2d 439 (Iowa 1984) (not opposing parties); *In re Hoelscher's Estate,* 249 Iowa 444, 450, 87 N.W.2d 446, 450 (1958). I regard the majority's cited authority as in conflict with this general rule. *United States Fire Ins. Co. v. Parks,* 239 N.C. 680, 80 S.E.2d 641 (1954) (per curiam); 22 Am.Jur.2d *Declaratory Judgments* § 89 (1968) (cites *Parks* for authority). Moreover, declaratory judgment actions are not confined to a dec-

laration of rights; affirmative relief may be granted and a jury may be impanelled if otherwise appropriate. Iowa R.Civ.P. 266, 268.

We cannot analogize from the statute of limitations cases in division I of the majority opinion, as the applicable principle is different. The appropriate statute of limitations is ascertained by determining the "actual nature of the action." *Clark v. Figge*, 181 N.W.2d 211, 213 (Iowa 1970). Under civil rule 29, however, a "compulsory" counterclaim is determined by whether it arose out of the same "transaction or occurrence". Construing rule 29 liberally, this entire controversy arose out of the same objective occurrence; it does not involve some unrelated incident. This court construes the rules of civil procedure liberally. *Board of Directors of Larralee Consolidated School District v. Cherokee County Board of Education*, 260 Iowa 210, 149 N.W.2d 304 (1967); *Krueger v. Lynch*, 242 Iowa 772, 48 N.W.2d 266 (1951). Federal courts give a liberal or a broad realistic interpretation to their compulsory counterclaim rule in the interest of avoiding a multiplicity of suits. *Pipeliners Local Union No. 778 v. Ellerd*, 503 F.2d 1193 (10th Cir.1974); *Albright v. Gates*, 362 F.2d 928 (9th Cir.1966); *Magna Pictures Corp. v. Paramount Pictures Corp.*, 265 F.Supp. 144 (C.D.Cal.1967); *Phelan v. Middle States Oil Corp.*, 124 F.Supp. 728 (C.D.N.Y.1952), *appeal dis'd*, 210 F.2d 360 (2nd Cir.1954), *aff'd*, 220 F.2d 593 (2nd Cir.1955), *cert. denied*, 349 U.S. 929, 75 S.Ct. 772, 99 L.Ed. 1260 (1955); *E.J. Korvette Co. v. Parker Pen Co.*, 17 F.R.D. 267 (C.D.N.Y. 1955); *Rosenthal v. Fowler*, 12 F.R.D. 388 (C.D.N.Y.1952). I thus disagree with the majority's reason for the result in its division II-C.

II. Under the facts of this particular case, however, Sandbulte should not be barred by the compulsory counterclaim rule. The parties' prior correspondence makes clear that when FBM commenced the declaratory judgment action it requested the action be limited to the sole issue of the coverage of the farm liability policy and not be complicated by other issues. Sand-

bulte obliged by confining the case to that issue. Under those circumstances FBM is in no position to advance the compulsory counterclaim rule in the present litigation. I thus concur in the result in division II-C of the majority opinion.